IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| BRITTANY IRISH, individually and as ) <br> Personal Representative of the Estate of ) <br> KYLE HEWITT, Deceased, and KIMBERLY ) <br> IRISH ) <br> ) <br>       **Plaintiffs** ) <br> ) <br> V. ) <br> ) <br> STATE OF MAINE, STATE POLICE OF ) <br> THE STATE OF MAINE and JOHN AND/ ) <br> OR JANE DOES, STATE POLICE ) <br> OFFICERS 1-10 ) <br> ) <br>       **Defendants** ) | Civil Action No. <br><br> **COMPLAINT** <br> **JURY TRIAL DEMAND** |

Plaintiffs Brittany Irish, Individually and as Personal Representative of the Estate of Kyle Hewitt, Deceased, and Kimberly Irish, by and through their undersigned attorneys, David J. Van Dyke Esq., Lynch & Van Dyke P.A., Lewiston, Maine, hereby files suit against the above-captioned Defendants, and in support thereof, state as follows.

## SUMMARY OF CLAIMS

This is a civil rights action brought by victims of a July, 2015 violent sexual assault and shooting rampage in Aroostook and Penobscot Counties, Maine -- including the Estate of a decedent killed on the night of the rampage -- involving Anthony Lord, against the State of Maine, State Police of the State of Maine and certain known and unknown State Police officers.

Plaintiffs maintain that their losses and injuries arise out of failures by Defendants to protect them from dangers which Defendants themselves created and in violation of a "special duty" which existed between Plaintiffs and Defendants, consistent with United States Supreme Court and First Circuit precedent.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action against the Defendants pursuant to 42 U.S.C. §1983 as well as 28 U.S.C. § 1331. This Court has jurisdiction over the pendant state law tort claims pursuant to 28 U.S.C. §1367(a).

2. Venue is properly vested in this Court because Plaintiffs and the Defendants are residents of this District and the acts complained of occurred within the jurisdiction of this District (specifically, Penobscot County and Aroostook County, Maine).

## PARTIES

3. Plaintiff Brittany Irish is an individual and a resident of Bangor, Penobscot County, Maine, and the duly-appointed Personal Representative of the Estate of Kyle Hewitt, Deceased. At all times relevant hereto, Plaintiff Brittany Irish resided within this District. Prior to his death, as detailed below, Kyle Hewitt resided within this District. The Estate of Kyle Hewitt, Deceased, is administered through the Probate Court of Penobscot County, Maine, within this District.

4. Plaintiff Kimberly Irish is an individual and a resident of Benedicta, Aroostook County, Maine. Kimberly Irish is the mother of Brittany Irish. At all times relevant hereto, Plaintiff Kimberly Irish resided within this District.

5.  Defendant State of Maine at all times relevant maintained a political presence within this District.

6.  Defendant State Police of the State of Maine (Maine State Police) is a instrumentality of the State of Maine which, at all times relevant maintained a political presence within this District.

7.  Defendants John and/or Jane Does State Police Officers (1-10) are individuals who were, at all relevant times hereto, officers of the Maine State Police, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Maine. The specific identity of these defendants is presently unknown to Plaintiff, but upon positive identification will be properly served with process, and their individual names will be added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does State Police Officers 1-10, all of whom were either physically present and/or involved directly in the incidents described in this Complaint, or were involved in same in a supervisory or oversight capacity.

## FACTUAL BACKGROUND

8.  Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

9.  Brittany Irish met Anthony Lord ("Lord") approximately four years ago through a close mutual friend in Sherman, Maine.

10. Upon information and belief, at the time of such meeting, Lord was a registered sex offender.

11. In 2011, insofar as Brittany Irish then had a son, J., Brittany Irish obtained a protection from abuse order against Lord individually and o/b/o her son. The PFA stood for two

3

years and expired in 2013.

12. Commencing in 2013, Kyle Hewitt and Brittany Irish resided together, with J.

13. Later in 2013, Brittany Irish and Lord reconciled, and Brittany Irish moved to Millinocket with Lord and other parties.

14. Commencing in approximately May 2013, Kyle Hewitt and Brittany Irish, together with J., resided in Old Town, Maine.

15. Commencing in approximately March 2014, Kyle Hewitt and Brittany Irish, together with J. and the couple's newborn son B. resided in Bangor, Maine.

16. In March 2015, during a period of separation from Kyle Hewitt, Brittany Irish re-connected with Lord and remained in a friendship relationship with Lord for a number of weeks. However, by late April or early May, 2015, after Brittany Irish had suffered certain medical setbacks, she began to be threatened and harassed by Lord – including through Lord's conveyance of explicitly sexual communications --, who desired that the parties' relationship become intimate.

17. Brittany Irish immediately advised the Bangor Police Department of the foregoing. The Bangor Police Department recommended that Brittany Irish obtain a further PFA from Lord. Additionally, upon information and belief, the Bangor Police Department advised Lord to stay away from Brittany Irish.

18. On or about July 6, 2015, as Brittany Irish made plans to obtain the recommended further PFA against Lord, Kyle Hewitt moved back into Brittany Irish's residence.

19. For a brief period of time, Lord appeared to stabilize and the threats and harassment ceased.

20. On or about July 14, 2015, Brittany Irish met Lord at a local IGA food store in

Bangor, at his request, for the purpose of her giving to him photographs which she had taken at Lord's son's funeral. Lord forced Brittany Irish into his car and drove into rural Aroostook County the countryside, where he repeatedly sexually assaulted her. In addition to multiple sexual assaults, Lord strangled Brittany Irish with her seatbelt and threatened to kill her, including among things, "[to] cut [her] from ear to ear". Lord specifically threatened to kill Brittany Irish if she reported the sexual assaults.

21. To Brittany Irish, Lord appeared sexually obsessed with her. Lord indicated to Brittany Irish that he was suicidal.

22. On the next day, on or about Wednesday July 15, 2015, Brittany Irish went to her local hospital and submitted to a rape kit evaluation. Later that day, she contacted the Bangor Police Department and advised the BPD that she has been sexually assaulted by Lord. The Bangor Police Department referred her to the Maine State Police insofar as the abduction and sexual assaults occurred in two separate counties (Aroostook and Penobscot). The Maine State Police asked Brittany Irish to drop off a written statement the next day.

23. That day, Brittany Irish went home and put her clothes which had been involved in the Lord assault into a bag for the Maine State Police.

24. On the next day, on or about Thursday July 16, 2015, Lord contacted Brittany Irish and asked her to meet with him in Howland so that the two of them could "talk about what had happened". Brittany Irish advised the State Police of the conversation. Brittany Irish asked that she be permitted to meet with Lord because she felt that she could talk to him, she could elicit a confession from him, she could wear a wire or be otherwise monitored and, knowing him as she did, she could keep him stable and

5

herself safe. Brittany Irish asked that someone from the Maine State Police be in her proximity to ensure her safety in the event that she was wrong.

25. The State Police refused Ms. Irish's request. The State Police advised Ms. Irish that "that's not the way we do it". Rather, the State Police indicated that they would be calling Lord to advise him that Brittany Irish had made claims of sexual assault against him and would solicit him to come to the local State Police barracks to give his side of the story.

26. Brittany Irish advised the State Police officers that she was afraid that that would incite Lord to terrible violence and that she would not thereupon be safe.

27. Shortly thereafter, representatives of the State Police (John and/or Jane Does 1-10) contacted Brittany Irish and told her that they had left a voice message for Lord telling him that Brittany Irish had made a complaint against him and asking him to come to the local State Police barracks.

28. On July 16, 2015, approximately two hours later, Brittany Irish received a telephone call from her father (her mother Kimberly Irish then suffering from multiple sclerosis), that the family barn in Benedicta, Maine, was on fire. Brittany Irish and her father recognized that the blaze was a set fire insofar as there had been no power to the barn for the preceding 18 years and nothing flammable was stored in the barn.

29. Brittany Irish immediately suspected that Lord had set the fire.

30. Upon receiving the news of the family barn being on fire, Kyle Hewitt and Brittany Irish departed from Bangor and headed toward Brittany Irish's parent's home in Benedicta. Brittany Irish contacted the Maine State Police (John and/or Jane Does 1-10) to report the circumstances.

31. John Does 1 and 2 State Troopers met with Brittany Irish in Benedicta.

32. While Brittany Irish was meeting with John Does 1 and 2 State Troopers, Brittany Irish was interrupted by a telephone call from her brother's best friend, who stated that he was at a bar talking with a very close friend of Lord's, who had advised him that Lord had received a voice mail from the State Police, had become immediately incensed and agitated and had indicated that "someone was going to die tonight". According to the telephone call, Lord had expressly stated that he was going to kill someone that night due to the State Police call.

33. In light of the content of the abovesaid telephone call, Brittany Irish asked John Does 1 and 2 State Troopers to have a State Police trooper sent to protect her and her children -- who were at another premises elsewhere in Aroostook County at the time -- overnight. John Does 1 and 2 State Troopers stated to Brittany Irish that they could not spare the manpower to protect anyone but would, rather, "keep an eye on the situation".

34. At that time, Kimberly Irish, Brittany's mother, asked John Does 1 and 2 State Troopers to at least have a State Police car parked in front of their Benedicta house overnight because she felt that that ruse, at least, would keep Lord away. John Does 1 and 2 State Troopers stated to Kimberly Irish that they could not even spare a car.

35. Upon information and belief, later that evening, several State Police cars were observed approximately eleven miles away "dumpster diving", apparently looking for accelerant from the Benedicta fire.

36. Late that evening, July 16, 2015, Brittany Irish telephoned John Does 1 and 2 State Troopers to inquire, again, why no State Police officer or car was stationed at the

home when it was obvious that Lord was incensed by the State Police call which he had received advising him of Brittany Irish's claim of rape and which had inspired his death threats.

37. Shortly thereafter, in the early morning hours of July 17, 2015, while Kimberly Irish, Kyle Hewitt and Brittany Irish were in the Irish home in Benedicta, Kyle Hewitt asleep on a sofa in the living room and Brittany Irish asleep on a recliner in the living room, Lord shot his way into the Irish home, shot and killed Kyle Hewitt, shot and grievously wounded Kimberly Irish and again abducted Brittany Irish.

38. With Brittany Irish as a hostage in his vehicle, Lord proceeded to drive southerly on various roads, engaged in a shoot-out which left another individual dead, and ultimately was apprehended.

## COUNT I
## FAILURE TO PROTECT/VIOLATION OF "SPECIAL DUTY"/ VIOLATION OF CIVIL RIGHTS

39. Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

40. As detailed above, by their actions and omissions of July 16 and 17, 2015, Defendants State of Maine, State Police of the State of Maine and John Does 1 and 10 State Troopers affirmatively acted to increase the threat which existed to Plaintiffs beyond that which otherwise existed including, without limitation upon the generality of the foregoing, by calling Lord to advise him of Brittany Irish's report of sexual assault, by refusing and/or failing to recognize the threat to Brittany Irish and others which was created by such call and by refusing and/or failing to provide protection to Brittany

Irish and others in light of the threat posed by Lord.

41. The actions of Defendants in their failure to protect Plaintiffs after their actions elevated the threat and Defendants were asked to provide reasonable protection shocks the conscience.

42. Whereas the State's failure to protect an individual against private violence does not ordinarily constitute a constitutional violation, that general principle is not absolute and an affirmative, constitutional duty to protect arises where the State, as here, creates the danger to an individual.

43. Defendants' failure(s) to protect Plaintiffs in light of the foregoing represents a constitutional violation of Plaintiffs' civil rights.

44. Alternatively, the Defendants violated Plaintiffs' civil rights insofar as they were, at all times relevant, subject to a "special duty" owed to Plaintiffs including, in among other respects, Defendants made an implicit and/or express promise to protect Plaintiffs, Plaintiffs relied upon such promise, Defendants failed to fulfill such promise and Plaintiffs were injured thereby, such unfulfilled promise creating a special duty in exception to the prevailing general duty principle described in Paragraph 42, above.

**WHEREFORE**, Plaintiffs demands judgment against Defendants jointly and severally, for compensatory damages, attorneys fees and costs far in excess of the minimum jurisdictional threshold of this Court and for such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II
## FAILURE TO TRAIN AND SUPERVISE PERSONNEL
## VIOLATION OF CIVIL RIGHTS

45. Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

46. Certain of John and/or Jane Does 1-10 Maine State Police officers are training/supervising officers responsible for the training, oversight and supervision of those John and/or Jane Does 1-10 State Police officers who were directly involved in the events of July 16, 17, 2015 as described above.

47. Plaintiffs had fundamental and well-established rights to be protected against private violence where the State, as here, created the danger.

48. The unlawful failure to protect Plaintiffs, in light of the circumstances in which it arose, violated Plaintiffs' substantive rights guaranteed by the United State Constitution.

49. The violations of Plaintiffs' aforesaid substantive constitutional rights, and the resulting catastrophic injuries and death (of Kyle Hewitt), were caused in whole or part by the John and/or Jane Does (1-10) State Police officers, to the extent that they were training and/or supervising officers, failure(s) to properly supervise, educate, instruct, train and/or control their personnel in general.

50. The above-referenced failures of John and/or Jane Does (1-10) State Police officers, to the extent that they were training and/or supervising officers, directly and proximately led to the suffering of Plaintiffs.

   **WHEREFORE**, Plaintiffs demand judgment against Defendants, including specifically John and/or Jane Does (1-10) State Police officers, to the extent that they were training and/or supervising officers, jointly and severally, for compensatory damages,

attorneys fees and costs far in excess of the minimum jurisdictional threshold of this Court and for such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT III
## RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

51. Plaintiffs incorporate by reference the above referenced paragraphs as if set forth fully herein.

52. In committing the actions and/or inactions described above and herein, John and/or Jane Does (1-10) State Police officers were acting, at all relevant times, within the course and scope of their employment with the Maine State Police.

53. The said Defendants State of Maine and State Police of the State of Maine are liable as principals for all violations of civil rights, torts or other wrongs committed by their respective agents and/or employees upon Plaintiffs, or any of them.

**WHEREFORE**, Plaintiffs demands judgment against Defendants State of Maine and State Police of the State of Maine jointly and severally, for compensatory damages, for attorneys fees and for costs far in excess of the minimum jurisdictional threshold of this Court and for such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

Dated at Lewiston, Maine this 10th day of December, 2015.

/s/David Van Dyke, Esq.
Lynch & Van Dyke P.A.
261 Ash Street - P.O. Box 116
Lewiston, Maine 04243-0116
Tel. 207-786-6641
dvandyke@hlrvd.com

*Attorneys for Plaintiffs Brittany Irish, Individually and as Personal Representative of the Estate of Kyle Hewitt, Deceased, and Kimberly Irish*