UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRITTANY IRISH, individually )
and as personal representative of )
the estate of KYLE HEWITT, )
deceased, and KIMBERLY IRISH, )
                              )
        Plaintiffs,            )
                              )
    v.                         )   1:15-cv-00503-JAW
                              )
DETECTIVE JASON FOWLER, et al. )
                              )
        Defendants.            )

**ORDER ON MOTION TO EXCLUDE D.P. VAN BLARICOM**

The Court denies defendants' motion to exclude the expert testimony of D.P. Van Blaricom, concluding that the proposed expert testimony is generally proper under *Daubert* and *Kumho*[1] and that any inadequacies are best tested through the traditional tools of trial work: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

**I.  BACKGROUND**

This case arises out of a terrible tragedy that took place in Aroostook and Penobscot Counties, Maine, in July of 2015, when Anthony Lord, the former boyfriend of Brittany Irish, entered her house, shot and killed her new boyfriend, shot and grievously wounded her mother, and abducted her. Ms. Irish, her mother, and the

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

estate of her deceased boyfriend filed a civil action against the state of Maine, the Maine State Police, and a number of police officers on the ground that, despite explicit warnings from Ms. Irish, the police notified Mr. Lord that she had gone to the police to complain that he had sexually assaulted her and then the Defendants failed to protect them from the ensuing harm.

On March 1, 2017, the Court of Appeals for the First Circuit vacated this Court's dismissal of the individual defendants and remanded the case for discovery on whether the individual defendants violated "accepted norms of police procedure" and whether they acted "despite foreseeing the harm" to the Plaintiffs. *Irish v. Maine*, 849 F.3d 521, 528 (1st Cir. 2017). The First Circuit wrote that the answers to these questions will "speak to whether the officers acted in deliberate indifference to Irish's safety, so much so that their conduct shocks the conscience." *Id.*

Following the remand, the parties engaged in discovery and after the Court consulted with the parties, it resolved that it would be more efficient to rule on any *Daubert/Kumho* motions before the parties briefed dispositive motions. *Order* (ECF No. 58). The Plaintiffs designated D.P. Van Blaricom as their police practices expert on June 13, 2017 and amended his report on October 11, 2018. *Defs.' Mot. to Exclude D.P. Van Blaricom* Attach. 1, *Report of Pls.' Police Practices Expert* (ECF No. 59). On December 14, 2018, the Defendants filed a motion to exclude the testimony of D.P. Van Blaricom on the grounds that he "is not qualified and his opinions are not relevant, helpful, or grounded in a reliable methodology." *Defs.' Mot. to Exclude D.P. Van Blaricom* (ECF No. 59) (*Defs.' Mot.*). On January 11, 2019, the Plaintiffs filed a

response.  *Pls.' Obj. to Defs.' Mot. to Exclude D.P. Van Blaricom* (ECF No. 62) (*Pls.' Opp'n*).  On January 25, 2019, the Defendants filed a reply.  *Defs.' Reply in Support of Mot. to Exclude D.P. Van Blaricom* (ECF No. 67) (*Defs.' Reply*).

## II. D.P. Van Blaricom

### A. Curriculum Vitae: A Summary

#### 1. Education

D.P. Van Blaricom graduated with a Bachelor of Arts degree magna cum laude from the University of Washington in 1973.  *Def.'s Mot.* Attach. 1, Ex. A at 11 (*Van Blaricom CV*).  He received a Master of Public Administration from Seattle University in 1976.  *Id.*  He is a graduate of the Federal Bureau of Investigations National Academy in Law Enforcement Executive Development programs.  *Id.*  He holds a certificate in forensics awarded in 2000 from the University of Washington and he has been certified as a litigation specialist by Americans for Effective Law Enforcement.  *Id.*

#### 2. Police Experience

Mr. Van Blaricom served twenty-nine years in municipal policing, with the last eleven as Chief of Police in Bellevue, Washington, then the state of Washington's "fourth largest and fastest growing city."  *Id.* at 10.

#### 3. Experience as a Police Practices Expert

Mr. Van Blaricom states that he has served as a police practices expert in more than 1,900 matters of police-related litigation.  *Id.* at 3, 9.  He lists forty-six states where he has been retained as an expert in litigation involving police practices and

states that he has testified in "several hundred depositions, federal court trials, state court trials and arbitrations." *Id.* at 9. He is a member of several professional associations. *Id.* at 15.

### B. D.P. Van Blaricom's Expert Opinions: A Summary

Mr. Van Blaricom opines that Maine State Police (MSP) "Detectives Perkins and Fowler did not exercise a reasonable standard of care in their investigation of victim's crime report." *Id.* at 6. He stated that when investigating complaints of sexual assault or domestic violence, the priorities are to "[b]elieve the victim" and to "[p]rotect the victim from further violence." *Id.* Mr. Van Blaricom wrote that Detectives Perkins and Flower violated these two priorities. *Id.* He also stated that the "first priority is to locate the suspect and take him into custody." *Id.* Mr. Van Blaricom wrote that, in his view, the police in this case assumed a special duty to plaintiffs, which they failed to fulfill." *Id.*

## III. THE POSITIONS OF THE PARTIES

### A. The Defendants' Motion

#### 1. D.P. Van Blaricom's Expertise

The Defendants maintain that Mr. Van Blaricom is not qualified to express opinions about police procedure. *Defs.' Mot.* at 4. The Defendants concede that Mr. Van Blaricom "may have enough experience to opine about certain areas of police practice." *Id.* But they assert that he "does not have sufficient expertise regarding conducting investigations of sexual assaults and other major crimes." *Id.* They point out that Mr. Van Blaricom has "neither personally conducted a sexual assault

4

investigation nor received any training in how to conduct such an investigation." *Id.* They observe that Mr. Van Blaricom has not worked in law enforcement since 1985. *Id.* The Defendants argue that "[g]iven his limited and outdated experience, [Van] Blaricom is not qualified to opine on whether MSP detectives properly investigated Brittany's sexual assault and kidnapping allegations." *Id.*

### 2. D.P. Van Blaricom's Opinions are Irrelevant and Unreliable

The Defendants first attack Mr. Van Blaricom's opinion about whether Detectives Fowler and Perkins "exercised a 'reasonable standard of care' when they were investigating [Ms. Irish's] sexual assault and kidnapping accusations." *Id.* at 5. The Defendants point out that the Plaintiffs are bringing only § 1983 claims, not state law negligence or malpractice claims. *Id.* They argue that the issue for a § 1983 claim is whether the defendants "violate[d] clearly established statutory or constitutional rights of which a reasonable person would know." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Defendants acknowledge that the First Circuit remanded this case to determine whether they "violated accepted norms of police procedure," *id.* (quoting *Irish*, 849 F.3d at 528, but they maintain that Mr. Van Blaricom's opinion is "not helpful because he does not opine that the defendant violated such norms." *Id.* Even when Mr. Van Blaricom measures the Defendants' conduct against standards established by the International Association of Chiefs of Police (IACP), the Defendants argue that Mr. Van Blaricom conceded that the IACP standards themselves expressly state that they are not intended to be a national standard. *Id.*

5

Instead, police officers are required, the Defendants say, to follow their own department guidelines. *Id.* Moreover, the Defendants state that Mr. Van Blaricom never identified any "obvious departure" that either Defendant made from the IACP model policies. *Id.* at 5-6.

The Defendants acknowledge that Mr. Van Blaricom referred to an MSP policy entitled "Maine State Police Policy Regarding Response to and Investigation of Domestic Violence Incident," the so-called "M-4 policy." *Id.* at 6. Here, the Defendants claim that a factfinder "does not need help from an expert to assess whether the defendants departed from it." *Id.* at 7.

The Defendants next maintain that Mr. Van Blaricom's opinions are unreliable. *Id.* They argue that he "selectively picked" facts and assumed them to be true, and then "arbitrarily rejected" other facts and wrongly assumed them to be false. *Id.* They cite the opinions of other courts that have called into question Mr. Van Blaricom's methodology. *Id.* at 7-9 (citing cases). They recite specific instances where they say Mr. Van Blaricom selectively manipulated the facts in this case. *Id.* at 9-10.

Finally, the Defendants argue that Mr. Van Blaricom should not "be allowed to opine that police officers assume a duty to protect people from private harm when they promise protection." *Id.* at 10. Citing First Circuit authority, the Defendants contend that the First Circuit has declined to impose liability on law enforcement officers in similar circumstances. *Id.* (citing *Rivera v. Rhode Island*, 402 F.3d 27, 37-38 (1st Cir. 2005)).

6

### B. The Plaintiffs' Response

In their opposition, the Plaintiffs return to the First Circuit opinion in this case. *Pls.' Opp'n* at 1-2. They quote the *Irish* opinion:

> If discovery reveals that the officers' actions violated accepted norms of police procedure or that they acted despite foreseeing the harm to Irish, it may strengthen the plaintiffs' argument that the officers exacerbated the danger that Lord pose. It may also speak to whether the officers acted in deliberate indifference to Irish's safety, so much so that their conduct shocks the conscience.

*Id.* at 1 (quoting *Irish*, 849 F.3d at 528). Quoting the *Irish* decision, they further say that the First Circuit concluded that "it was important to determine . . . what steps the officers took to protect Brittany Irish":

> More specifically, based on this record, we do not know the steps, if any, that officers should take when they have reason to believe that an alleged perpetrator is violent and likely to retaliate against a victim who reports such serious crimes . . . . [V]iolation of protocol and training is relevant both to the substantive due process and qualified immunity standards.

*Id.* at 2 (quoting *Irish*, 849 F.3d at 528). They then point to specific questions that the First Circuit deemed relevant to the Defendants' potential liability. *Id.* at 2-3. In fact, the Plaintiffs say that they tailored "all their discovery efforts to follow the roadmap set forth by the First Circuit." *Id.* at 3.

#### 1. Qualifications

The Plaintiffs review Mr. Van Blaricom's background and experience as an expert witness and pronounce him "qualified to render an opinion on the actions of defendant detectives in this case involving protocols for both domestic violence and gross sexual assault." *Id.* at 7-9.

### 2. Methodology

The Plaintiffs explain Mr. Van Blaricom's methodology as being "simply one of comparison," comparing "the action and inactions of the detectives to the standards in the [MSP] Policies, other national law enforcement standards and his experiences from a long career in law enforcement." *Id.* at 10. They say that courts have routinely concluded that this type of comparison is "a reliable methodology" under *Daubert*. *Id.* at 10-11 (citing cases). Indeed, the Plaintiffs cite court cases that have rejected similar attacks on Mr. Van Blaricom's methodology. *Id.* at 11.

### 3. Relevance

Responding to the Defendants' claim that Mr. Van Blaricom's opinions are not relevant to § 1983 issues, the Plaintiffs say that the Defendants "have forgotten the roadmap provided by the First Circuit in this case." *Id.* at 12. Specifically, they say, the First Circuit remanded the case to determine whether the Defendants complied with the norms of police procedure, which is relevant to the "deliberate indifference" and the "shocks the conscience" analyses. *Id.* They point to cases where other courts have concluded that the reasonableness of law enforcement actions is relevant to a § 1983 standard. *Id.* at 13-14. The Plaintiffs defend Mr. Van Blaricom's references to the IACP model policies as reference material. *Id.* at 15. Finally, they reiterate the view that the Defendants' responses to the Plaintiffs' demands for protection imposed upon the Defendants a special duty to protect them. *Id.* at 16.

**C.   Defendants' Reply**

In their response, the Defendants point out that Mr. Van Blaricom does not express any opinions about either the Maine statutory or MSP policy requirements for protecting victims of domestic violence. *Defs' Reply* at 1-2. In the Defendants' words, "[w]hile the plaintiffs are certainly free to argue that the defendants violated the statute and policy, Van Blaricom himself does not offer such an opinion." *Id.* at 2. Next, the Defendants maintain the neither the statute nor the MSP policy applies here because the Defendants did not arrive at the scene of a domestic violence incident. *Id.* They say that Mr. Van Blaricom never references 19-A M.R.S. § 4012(6) and only obliquely mentions the MSP M-4 policy. *Id.* The Defendants criticize Mr. Van Blaricom for offering "somewhat conflicting opinions about whether defendants violated the M-4 policy." *Id.* at 3-4. They reiterate their earlier point about the inapplicability of the IACP model policies. *Id.* at 4-5. In short, the Defendants conclude, Mr. "Van Blaricom's testimony is irrelevant and unhelpful because he does not identify any violations of established police protocols." *Id.* at 5. The Defendants close by saying that Mr. Van Blaricom should not be allowed to offer an opinion on a matter of law, namely the applicability and existence of the "gratuitous assumption of duty" theory.

**D.     *Irish v. Maine*, 849 F.3d 521 (1st Cir. 2017)**

On March 1, 2017, the Court of Appeals for the First Circuit vacated this Court's order dismissing the Plaintiffs' lawsuit and remanded the case for discovery. *Irish v. Maine*, 849 F.3d at 529. The *Irish* Court extensively discussed its rationale and it assists this Court's analysis of the pending motion.

9

The *Irish* Court discussed the Plaintiffs' theory that contrary to Brittany Irish's earnest pleading, the Defendants in this case had created a danger by leaving a voicemail message with Mr. Lord about her allegation that he had kidnapped, raped and strangled her, and then refused to protect her despite the fact she had told the police she suspected that Mr. Lord had just burned down their family barn. *Id.* at 524-25. Mr. Lord tracked Ms. Irish to her parents' home, shot and killed her new boyfriend, grievously wounded her mother, and abducted her. *Id.*

The First Circuit defined the "state-created danger" theory: when the state "creates the danger to an individual, an affirmative duty to protect might arise." *Id.* at 525 (quoting *Rivera v. Rhode Island*, 402 F.3d 27, 34-35 (1st Cir. 2005) (citing *Deshaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 201 (1989)). Although the First Circuit noted that at least "eight sister circuits have recognized the existence of the state-created danger theory" and that the First Circuit "has discussed the possible existence of the state-created danger theory," the *Irish* Court acknowledged that it has "never found it applicable to any specific set of facts." *Id.* at 526. If the state-created danger theory were applicable, to be successful in a claim under 42 U.S.C. § 1983, a plaintiff would also have to prove a substantive due process violation: "the state actions must shock the conscience of the court." *Id.* (quoting *Rivera*, 402 F.3d at 35). To determine whether a state actor's actions have met this high standard, the First Circuit wrote that one factor is whether "actors have an opportunity to reflect and make reasoned and rational decisions, deliberately

10

indifferent behavior may suffice." *Id.* (quoting *Rivera*, 402 F.3d at 36) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851-52 (1998)).

Assessing these legal issues in the factual context of this case, the First Circuit was concerned about whether "there are standard police protocols that were violated" by the Defendants. *Id.* The First Circuit observed that "[n]either party at oral argument could provide any detail on acceptable police procedures or training, if any, on how and when to notify the accused of the allegations that have been filed against him or her under similar circumstances." *Id.* at 527. In terms of police protocol and procedure, the *Irish* Court was concerned about:

(1) the Defendants' decision to leave a voice message despite the ex-boyfriend's "foreseeable violent reaction,"

(2) the nature of the crimes they were investigating, namely violent assault, rape, and threats to kill,

(3) any prior effort to calm down the ex-boyfriend or prevent him from inflicting harm,

(4) what information the Defendants had about the veracity of Brittany Irish's allegations,

(5) what knowledge they possessed about Mr. Lord's propensity for violence,

(6) what they knew about the risk Mr. Lord would act on that propensity,

11

(7) how much time the Defendants had spent with Brittany Irish to go over her written statement in which she complained about Mr. Lord's strangling and raping her and threatening to kill her,

(8) whether the Defendants had contacted the local hospital to obtain the results of the rape kit before leaving the voicemail message with Mr. Lord,

(9) whether the State Police had prior experience with Mr. Lord,

(10) whether the Defendants ran Mr. Lord's name through the system to determine whether he had any prior convictions,

(11) whether the Defendants had contacted the Bangor Police Department which had referred Brittany Irish's case to the State Police,

(12) whether the Defendants left the voicemail message on Mr. Lord's cellphone,

(13) whether the Defendants attempted to locate Mr. Lord after Brittany Irish reported that Mr. Lord had burned down the family barn and after Mr. Lord told his friend that "someone was going to die tonight," and

(14) whether the Defendants had probable cause to arrest Mr. Lord, but decided to leave the voicemail message instead.

*Id.* at 527-28.

After listing these issues, the First Circuit wrote that "[a]ll or some of the answers to these questions may be pertinent to the substantive due process and qualified immunity issues." *Id.* at 528. The First Circuit stated:

> If discovery reveals that the officers' actions violated accepted norms of police procedure or that they acted despite foreseeing harm to Irish, it

may strengthen the plaintiffs' argument that the officers exacerbated the danger that Lord posed. It may also directly speak to whether the officers acted in deliberate indifference to Irish's safety, so much so that their conduct shocks the conscience.

*Id.* The *Irish* Court went on to state:

> [I]f discovery reveals that no protocols were violated, then the plaintiffs may have a harder time surviving a 12(b)(6) motion. While the fact that the officers did not take further discretionary steps to ensure Irish's safety may amount to negligence, mere negligence would be insufficient to maintain a claim of substantive due process violation.

*Id.*

## IV. DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court designated trial judges as gatekeepers responsible for determining whether Rule 702's requirements are met in any given case. *Id.* at 597. A judge exercising the gatekeeper role must "ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending *Daubert's*

holding to technical and other specialized expert testimony). The inquiry under Rule 702 is a "flexible one." *Vargas*, 471 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594).

### B. Qualified as Expert

The Defendants' main objection to Mr. Van Blaricom's qualifications is his asserted lack of "sufficient expertise regarding conducting investigations of sexual assaults or other major crimes." *Defs.' Mot.* at 4. The Defendants also point to his lack of recent experience as a law enforcement investigator. *Id.*

The Court disagrees with the Defendants. In *Santos v. Posadas de Puerto Rico Associates, Inc.*, 452 F.3d 59 (1st Cir. 2006), the First Circuit emphasized that "experts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." *Id.* at 63; *cf. United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987) (explaining that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies" and emphasizing "the value of extensive practical experience"). At the same time, a testifying expert "should have achieved a meaningful threshold of expertise in the given area." *Hinton v. Outboard Marine Corp.*, 828 F. Supp. 2d 366, 372 (D. Me. 2011) (internal citation omitted). "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos*, 452 F.3d at 64 (citing *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) and *United States v. Paiva*, 892 F.2d 148, 160 (1st Cir. 1989)). A trial judge has "broad

discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses." *Vargas*, 471 F.3d at 262.

In his resume, Mr. Van Blaricom describes himself as a "police practices expert." *Van Blaricom CV* at 10. Mr. Van Blaricom spent twenty-nine years "in municipal policing with the last 11 as Chief of Police . . . in Bellevue, Washington." *Id.* Although he had last done so in 1973, Mr. Van Blaricom testified that he probably personally investigated more than twenty sexual assault cases. *Pls.' Opp'n* Attach. 2, *Dep. upon Oral Exam. of D.P. Van Blaricom* 34:3-22. (*Van Blaricom Dep.*). Mr. Van Blaricom has "[t]estified in several hundred depositions, federal court trials, state court trials and arbitrations."[2] *Id.*

In the Court's view, Mr. Van Blaricom's background provides him with sufficient experience, knowledge, training, and skill to qualify as an expert in police procedure and protocol under Rule 702. The Defendants are, of course, free to explore any claimed deficiencies in Mr. Blaricom's expertise by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

---

[2] The Court is skeptical about one aspect of Mr. Van Blaricom's resume. He states that he has been "Recognized as an expert on the following issues and **all of the cited appellate court decisions were decided in favor of my client**. 1. POLICE ADMINISTRATION, POLICY, PRACTICES, PROCEDURES and STANDARDS OF CARE."

To the Court's surprise, Mr. Van Blaricom cited the First Circuit opinion in *Irish v. Maine* as one of the cases in which an appellate court recognized him as an expert. *Van Blaricom's CV* at 9. The Court is perplexed. In its opinion, the First Circuit does not mention Mr. Van Blaricom, and it overturned this Court's granting of a motion to dismiss, which was based on the allegations in the Plaintiffs' Complaint, where Mr. Van Blaricom's name is not mentioned. The Court does not see how Mr. Van Blaricom can claim that in the *Irish* opinion, the First Circuit somehow recognized him as an expert in police administration, policy, practices, procedures and standards of care.

C.  **Relevance and Reliability**

Expert opinions are admissible if they are "relevant not only in the sense that all evidence must be relevant [pursuant to Federal Rule of Evidence 402], but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1988). In other words:

> The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is "[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved."

*United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) (quoting *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994)).

A fair reading of the appellate opinion in *Irish* leads to the conclusion that the First Circuit remanded this case to determine whether there were "violation[s] of protocol and training." *Irish*, 849 F.3d at 528. Issues of proper police procedure and protocols when addressing the situation presented in this case "are not topics ordinarily within the knowledge of the jury and thus are appropriate for expert testimony." *First Marblehead Corp. v. House*, 541 F.3d 36, 42 (1st Cir. 2008). The Court views the Defendants' objections to the details of Mr. Van Blaricom's testimony — whether and how he may refer to IACP model standards, whether his reference to the MSP M-4 policy is sufficiently concrete, whether the general standards for domestic violence investigations apply to the specific circumstances in the Irish case

— as potential grounds for a motion in limine, objection at trial, or cross-examination, but insufficient to rule Mr. Van Blaricom's testimony inadmissible.

Nor is the Court convinced by the Defendants' arguments about the reliability of Mr. Van Blaricom's testimony. A court must determine "whether the testimony has a reliable basis in light of the knowledge and experience of the relevant discipline." *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007) (internal citation omitted). An expert is permitted to testify on the basis of his experience. *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308 (1st Cir. 2005) (citing *Kumho Tire Co.*, 526 U.S. at 156). However, "[i]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. The gatekeeper role requires the judge "to ensure that expert opinions are not 'connected to existing data only by the *ipse dixit* of the expert.'" *Knowlton v. Bankers Life & Cas. Co.*, 882 F. Supp. 2d 129, 131 (D. Me. 2012) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Without analyzing each of the Defendants' objections, the Court sees their objections to Mr. Van Blaricom's selective use of facts and his supposed ipse dixit analysis to be matters for cross-examination, not for wholesale exclusion. *See Zuckerman v. Coastal Camps, Inc.,* 716 F. Supp. 2d 23, 28 (D. Me. 2010) ("When the 'adequacy of the foundation for expert testimony is at issue, the law favors vigorous cross-examination over exclusion'") (quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)); *see Payton v. Abbott Labs.*, 780 F.2d 147, 156 (1st

Cir. 1985) ("If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony"); *Brown*, 402 F. Supp. 2d at 308 ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination") (citation omitted).

### D. Special Duty

In general, the Court agrees with the Defendants that whether a police officer has a special duty to protect a person from violence from a private actor is at least a mixed question of law and fact. The problem with the Defendants' argument on this point, however, is that it repeats the same contentions that convinced this Court but not the First Circuit. While it will be this Court's obligation to instruct the jury on the law, the Court will not preclude the Plaintiffs from presenting expert testimony that in the circumstances of this case, proper police protocol would have imposed on the Defendants the obligation to protect the Plaintiffs or not to exacerbate the danger Mr. Lord presented to them. This, after all, is why the First Circuit remanded the case in the first place.

### V. SUMMARY

The Court is dismissing the Defendants' motion without prejudice to emphasize that it is not ruling finally on any of the issues presented in the Defendants' motion. The Court is only ruling that the Defendants have not made the case for wholesale exclusion.

## VI. CONCLUSION

The Court DISMISSES without prejudice the Defendants' Motion to Exclude D.P. Van Blaricom (ECF No. 59).[3]

SO ORDERED.

                                           /s/ John A. Woodcock, Jr.
                                           JOHN A. WOODCOCK, JR.
                                           UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2019

---

[3] In accordance with its discussions with counsel, the Court ORDERS counsel to consult with one another and present a schedule for the anticipated dispositive motion. If the Court has not received a proposed schedule within one week, it will schedule a conference of counsel either to set briefing deadlines or schedule the case for trial.