UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRITTANY IRISH, individually )
and as personal representative of )
the estate of KYLE HEWITT, )
deceased, and KIMBERLY IRISH, )
)
      Plaintiffs, )
)
   v. ) 1:15-cv-00503-JAW
)
DETECTIVE JASON FOWLER, et al. )
)
      Defendants. )

# ORDER ON MOTION TO AMEND PLAINTIFF'S RESPONSE TO REQUEST FOR ADMISSION

Concluding that the amendment of a response to a request for admission would promote the presentation of the merits of the action and that there is no suggestion of prejudice from the amendment, the Court grants a plaintiff's motion to amend her response to a request for admission.

## I.   BACKGROUND

On December 10, 2015, the Plaintiffs initiated this civil action against the state of Maine and several state police officers pursuant to 42 U.S.C. § 1983, alleging under various legal theories that the Defendants were legally responsible for a series of tragic events in 2015 leading to the death of Brittany Irish's boyfriend, Kyle Hewitt, the shooting of Kimberly Irish, Brittany Irish's mother, and the kidnapping of Brittany Irish. *Compl.* (ECF No. 1). At the time the Complaint was filed, the Plaintiffs were represented by Attorney David Van Dyke. *Id.* On February 28, 2018,

however, Attorney Van Dyke passed away unexpectedly and Attorney Scott J. Lynch inherited Attorney Van Dyke's caseload of eighty-nine cases, including this civil action. *Pl.'s Mot. to Am. Resp. to Admissions* at 1 (ECF No. 71) (*Pl.'s Mot.*). Attorney Lynch entered his appearance on behalf of the Plaintiffs on March 14, 2018. *Notice of Appearance* (ECF No. 47). On March 21, 2018, the Magistrate Judge held a conference to discuss the future course of the case and extended a number of the scheduling deadlines. *Report of Tel. Conf. and Second Am. Scheduling Order* (ECF No. 52) (*Second Am. Scheduling Order*). The Plaintiffs' deadline for designation of expert witnesses, for example, was extended from October 31, 2017 to July 2, 2018. *Compare Scheduling Order* at 2 (ECF No. 25), *with Second Am. Scheduling Order* at 1.

On May 8, 2018, the Defendants propounded a request for admissions, consisting of twenty-eight separately stated questions. *Id.* Attorney Lynch represents in the motion that when the Defendants filed their May 8, 2019 requests for admission, he had not met the Plaintiffs, had not reviewed the one-terabyte hard drive of discovery provided by the state of Maine, and had not reviewed the 5,000-plus pages of paper discovery that Attorney Van Dyke had received, reorganized, and tabulated. *Id.* Brittany Irish signed the responses to the requests for admission on May 30, 2018. *Defs.' Opp'n to Pl.'s Mot. to Am Resp. to Reqs. for Admissions* (*Defs.' Opp'n*), Attach. 1, *Pl. Brittany Irish's Resp. to Def.'s First Req. for Admissions* at 4 (ECF No. 73) (*Irish Resp. to Req. for Admissions*).

One response is the subject of the Plaintiff's motion:

> 27. When Anthony Lord received a voice mail message from Detective Perkins on July 16, 2015, he believed the message related to the death of his son.
>
> **RESPONSE**: Admit.

*Pl.'s Mot.* at 2; *Pl.'s Resp. to Req. for Admissions* at 4. Ms. Irish seeks to clarify her response as follows:

> **RESPONSE**: Plaintiff Brittany Irish admits that Anthony Lord stated in an interview with detectives that he believed the message from Detective Perkins related to the death of his son. Plaintiff Brittany Irish does not know whether Anthony Lord actually believed that to be true and, therefore, denies the same and leaves the Defendants to their proof.

*Pl.'s Mot.* at 2. The Defendants object. *Defs.' Opp'n* at 1-5.

## II. THE PARTIES' POSITIONS

### A. The Plaintiff's Position

Quoting Federal Rule of Civil Procedure 36(b), the Plaintiff acknowledges that there is a "two-part test to determine whether it is reasonable and appropriate for the court to grant relief to a party requesting to withdraw or amend discovery admissions." *Pl.'s Mot.* at 3. The first is whether it would "promote the presentation of the merits of the action", and the second is whether it would "prejudice the requesting party in maintaining or defending the action on the merits." *Id.*; FED. R. CIV. P. 36(b). Regarding the first issue, the Plaintiff emphasizes the Court's discretion in determining whether to permit withdrawal or amendment of admissions. *Id.* at 3-4. The Plaintiff states that her initial response is "manifestly inconsistent with the position of Brittany Irish in this law suit." *Id.* at 4. She also stresses that she filed the motion before the dispositive motion deadlines had lapsed.

3

*Id.* She attributes her initial response to three things: (1) Attorney Van Dyke's untimely death, (2) the volume of material new counsel confronted, and (3) new counsel's failure to appreciate the nuance of what the term "believed" meant in the context of this admission. *Id.* at 5. Regarding the second prong, the Plaintiff argues that the Defendants will not be prejudiced in the way that concept is applied in this context. *Id.* at 5-6.

      B.      **The Defendants' Opposition**

The Defendants acknowledge that the courts have considerable discretion over whether to permit the withdrawal or amendment of an admission. *Defs.' Opp'n* at 1. However, they note that a court must exercise its discretion "within the parameters drawn by Rule 36(b)'s two-part test." *Id.* (quoting *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 876 (1st Cir. 1990)). The Defendants say that the Court should reject the motion because the Plaintiff "has offered no explanation as to the nature of the 'mistake' she made when making her admission." *Id.* Rather, they argue, the Plaintiff's motion was caused by her "recent realization of the damaging effect of her admission in the upcoming summary judgment proceedings." *Id.* They also assert that the amendment of her response would not "promote the presentation of the merits." *Id.* at 1-2.

The Defendants expand on the context of the admission. *Id.* at 2. They say that Detective Micah Perkins left a voicemail message with Mr. Lord, but he did not say why he was calling. *Id.* at 2. The Defendants write that Mr. Lord "thought the message related to the earlier death of his son, which the Maine State Police were

4

investigating as a possible homicide." *Id.* The Defendants assert that "[t]here is evidence that Lord did not kidnap and sexually assault Irish, and, if that is true, he would have had no reason to suspect that a call from the police related to a complaint Irish had made against him." *Id.* Finally, the Defendants maintain that "there is evidence that Lord and Irish had various communications after Detective Perkins left the message, and Lord may well have told Irish about the message that had been left for him and what he thought it related to." *Id.* In light of these allegations, the Defendants are of the view that the Plaintiff's motion represents a "strategic tactic," not a change in the underlying facts that led to the admission. *Id.* at 2-3.

They argue that the requested change in the admission would not affect the presentation of the merits of the case because one of Ms. Irish's claims is that the state police refused to provide overnight protection for her. *Id.* at 4-5. They represent that they intend to present evidence in their motion for summary judgment that "Lord had no reason to believe that the police were calling him about allegations made by Irish, and that he believed they were calling about the death of his son." *Id.* at 4.

In their opposition, the Defendants did not address the prejudice prong. *Id.* at 1-5.

**C.    Plaintiff's Reply**

Ms. Irish filed a brief reply. *Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. to Am. Resp. to Admissions* (ECF No. 74). She accuses the Defendants of "elevating form over substance." *Id.* at 1. She says that "[t]heir logic is that the response to Request Admission No. 27 has been inaccurate for a long time and, therefore, must still be

5

taken as fact." *Id.* However, she says, it is her position that "when an inaccuracy is noted, it ought to be corrected so that decisions are based on the merits." *Id.*

### III. DISCUSSION

The parties correctly cite Federal Rule of Civil Procedure 36(b) as the operative rule that addresses motions to amend a response to a request for admission:

> Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

FED. R. CIV. P. 36(b). In 1970, when this provision was last amended, the Civil Rules advisory committee wrote:

> Provision is made for withdrawal or amendment of an admission. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.

FED. R. CIV. P. 36(b) advisory committee's note to 1970 amendment.

#### A. The Allegations in the Second Amended Complaint

In her Second Amended Complaint, Ms. Irish alleged that Anthony Lord was her former boyfriend and from 2011 to 2015, Ms. Irish and Mr. Lord had a complicated relationship with periodic break-ups and reconciliations. *Second Am. Compl.* ¶¶ 8-18 (ECF No. 38). At some point (the Complaint does not allege when exactly), Mr. Lord's son died, and on July 14, 2015, Ms. Irish met Mr. Lord at a local IGA food store at his request to give him photographs Ms. Irish had taken at his son's funeral. *Id.* ¶ 19. The Complaint alleges that Mr. Lord "forced Brittany Irish into his car and drove her into rural Aroostook County the countryside, where he repeatedly sexually

6

assaulted her. In addition to multiple sexual assaults, Lord strangled Brittany Irish with her seatbelt and threatened to kill her, including among things, '[to] cut [her] from ear to ear.' Lord specifically threatened to kill Brittany Irish if she reported the sexual assaults." *Id*.

The Complaint states that Ms. Irish went to her local hospital and submitted to a rape kit evaluation. *Id*. ¶ 21. She then contacted the Bangor Police Department, and the Bangor Police referred her to the State Police because the abduction and sexual assaults occurred in two separate counties. *Id*. She says that the Maine State Police asked her to drop off a written statement the next day. *Id*.

The next day, July 16, 2015, Mr. Lord contacted Ms. Irish and asked her to meet him in Howland, Maine, so that they two of them could "talk about what had happened." *Id*. ¶ 23. Ms. Irish let the State Police know and asked that she be permitted to meet with Mr. Lord to attempt to elicit a confession from him. *Id*. She offered to wear a wire or be otherwise monitored, but asked that someone from the State Police be nearby to ensure her safety. *Id*. The State Police refused her request. *Id*. ¶ 24.

The Complaint alleges that the State Police told her that they would call Mr. Lord to advise him that she had made claims of sexual assault against him and would ask him to come to the local State Police barracks to give his side of the story. *Id*. Ms. Irish alleges that she advised the State Police that she was afraid doing so would incite Mr. Lord to terrible violence and she would not be safe. *Id*. ¶ 25. Shortly thereafter, the State Police let her know that they had left a voice message for Mr.

7

Lord, telling him that Ms. Irish had made a complaint against him and asking him to come to the local State Police barracks. *Id.* ¶ 26. Thereafter, according to the Complaint, Mr. Lord went on a campaign of violence, burning down the Irish family barn in Benedicta, Maine, and proceeding to the Irish home, where he shot and killed Ms. Irish's boyfriend, Kyle Hewitt, shot and grievously wounded Kimberly Irish, and again abducted Brittany Irish. *Id.* ¶¶ 27-29, 37-38. Finally, the Complaint alleges that while Ms. Irish was meeting with the State Troopers, she was interrupted by a phone call from her brother's best friend, who stated that he was at a bar talking with a very close friend of Mr. Lord's and Mr. Lord had told him that he had received a voicemail from the State Police, that Mr. Lord had become immediately incensed, and that Mr. Lord had said that "someone was going to die tonight." *Id.* ¶ 32.

### B. The Defendants' Allegations

In their opposition, the Defendants contest many of the most important allegations in the Irish Complaint. They say that "[a]lthough Irish alleged in her complaint that [Detective Micah] Perkins stated in the message that he was calling because Irish had made a complaint against Lord, it will be undisputed that Perkins did not say why he was calling." *Defs.' Opp'n* at 2. They maintain that "[t]here is also evidence that Lord thought that the message related to the earlier death of his son, which the Maine State Police were investigating as a homicide." *Id.* They further assert that "[t]here is evidence that Lord did not kidnap and sexually assault Irish, and, if that is true, he would have had no reason to suspect that a call from the police related to a complaint Irish had made against him." *Id.* Finally, they contend that

8

"there is evidence that Lord and Irish had various communications after Detective Perkins left the message, and Lord may well have told Irish about the message that had been left for him and what he thought it related to." *Id.*

### C. The Significance of Anthony Lord's Belief

These starkly divergent views of the events that led up to Anthony Lord's violent rampage provide context for the significance of Admission 27. If Ms. Irish is deemed to have admitted that Mr. Lord thought that the State Police voicemail message related not to Ms. Irish, but to his dead son, then this admission snaps the causal link between Mr. Lord's prior violent acts and threats against Ms. Irish, Ms. Irish's earnest demand that the troopers not contact Mr. Lord without providing for her safety, Mr. Lord's angry and threatening conduct upon receiving the voicemail, and his subsequent violent criminal rampage against Ms. Irish, her mother, boyfriend and others. The admission is also consistent with the Defendants' assertions that Ms. Irish is simply conjuring up her version of the events in this case, including that Mr. Lord previously kidnapped and sexually assaulted her following their meeting at the IGA.

By contrast, if Ms. Irish is deemed to have admitted only that Mr. Lord later told law enforcement that he believed the voicemail message was about his dead son, the causal link between Ms. Irish and Mr. Lord is potentially not broken, because a jury might choose to disbelieve Mr. Lord's own statement about his reaction to the voicemail message, and a jury could determine that his response to the voicemail would be consistent, based on other evidence, with Mr. Lord's jumping to the

9

conclusion that Ms. Irish had complained about him to the state police, causing him to go on his rampage.

Thus, as the Court understands it, the response to request for admission 27 has a potentially critical impact on the Plaintiff's ability to present "the merits of the action." FED. R. CIV. P. 36(b). It is true, as the Defendants allege, that regardless of Mr. Lord's subjective belief when he received the voicemail, Ms. Irish will still have one theory to pursue against the Defendants, namely that they failed to provide her with security despite her reasonable fear of Mr. Lord. But the case is markedly different if restricted to her security requests, because Ms. Irish will not be able to contend that the State Police created the risk against which Ms. Irish needed protection. *See Irish v. Maine*, 849 F.3d 521, 523 (1st Cir. 2017) (discussing the Plaintiffs' state-created danger theory). Thus, if limited in the fashion the Defendants propose, Ms. Irish will be prevented, as a practical matter, from presenting the most salient and potentially troublesome claim to a jury.

On May 30, 2019, the Maine Supreme Judicial Court issued an opinion in the case of *State v. Lord*, 2019 ME 82, __ A.3d __. The Maine Law Court's opinion is notable as it recapitulates the facts to which Mr. Lord agreed when he pleaded guilty to "two murders and a dozen other crimes." *Id.* ¶¶ 3-10. The *Lord* Court wrote that at his guilty plea, Mr. Lord did "not dispute the evidentiary support for any of the following facts." *Id.* ¶ 3. The Court stated:

> In July 2015, Anthony Lord was thirty-five years old. Two months prior to the events in issue, his six-month-old son had died as a result of what Lord considered to be the intentional act of another man. <u>Also prior to</u>

10

<u>the events in issue, Lord's former girlfriend had reported criminal conduct by Lord toward her.</u>

*Id.* ¶ 4. This recitation, which the Maine Supreme Judicial Court confirmed Mr. Lord acknowledged was provable, *id.* ¶ 3, is carefully worded, but one interpretation is that Mr. Lord knew that his former girlfriend, no doubt Brittany Irish, had told the police about the sexual assault before Mr. Lord went on his rampage. If so, Mr. Lord may have admitted at his guilty plea that he knew Ms. Irish reported the sexual assault to the police before he went on what the Law Court described as his "reign of violence." *Id.* ¶ 34.

The Maine Supreme Judicial Court opinion, together with Mr. Lord's brief to the Law Court, reveal another concern. Mr. Lord's attorney argued to the Maine Supreme Judicial Court that Mr. Lord went on his rampage after having "become extremely distressed because someone had recently murdered his infant son and his son's case had not been resolved." *Br. of Appellant* at 1, *State v. Lord*, 2019 ME 82, No. 17-364. Assuming that Mr. Lord believed someone had murdered his son and that he was upset about the delay in the police investigation of his son's death, it is extremely odd that a voicemail message from the State Police, asking to meet with him, would set Mr. Lord off. More logically, if Mr. Lord had been concerned about police inaction on his son's death, he would have welcomed the opportunity to come and talk to the State Police about their investigation, and the message would have signaled to him that the police were actively pursuing an investigation of his son's death.

11

If the individual Mr. Lord suspected of killing his son had been Kyle Hewitt, there would at least be a link between what Mr. Lord supposedly believed when he received the State Police voicemail message and his later actions. But there is no suggestion that Mr. Lord thought Mr. Hewitt had killed his son. In fact, on June 1, 2019, the Bangor Daily News reported that on May 15, 2019, a state of Maine Superior Court Justice found a man named Jessee Mackin guilty of manslaughter in the death of Mr. Lord's son. Judy Harrison, BANGOR DAILY NEWS, *Millinocket man guilty of manslaughter in death of 'Baby Larry'* (June 1, 2019). The article says that Mr. Mackin was the only person present when the boy died. *Id.* Even assuming the accuracy of the Defendants' position, after receiving a voicemail message from the State Police requesting to meet about the death of his son, Mr. Lord did not kill the person who was with his son when his son died, and instead proceeded to his ex-girlfriend's house and killed her boyfriend.

The Court concedes that it is difficult to assign logic to Mr. Lord's actions on July 16, 2015. After all, this is a man who, by the Law Court's account, murdered a total stranger whom he encountered in a woodlot, when the stranger did not, upon Mr. Lord's request, give him a cigarette and a cellphone. *Id.* ¶ 9. But applying usual human reactions, it seems much more likely that Mr. Lord believed the State Police voicemail related to Brittany Irish's report of his alleged sexual assault, which she said he committed, than the killing of his son, which he thought someone else had done.

To resolve the Plaintiff's motion, the Court need not and cannot resolve these factual issues. Nevertheless, it seems apparent that Mr. Lord's subjective belief about the voicemail message may be a critical factual dispute between the Plaintiff and the Defendants, a dispute properly resolved only by a factfinder.

In *Siguel v. Allstate Life Insurance Company*, No. 94-1392, 1995 U.S. App. LEXIS 4666 (1st Cir. Mar. 10, 1995), the First Circuit addressed Rule 36(b) motions to withdraw or amend an admission. Addressing the first prong, the First Circuit wrote that "the first half of the test is clearly satisfied since the effect of upholding the admissions would be to practically eliminate any presentation on the merits." *Id.* at \*14 (quoting *Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192, 193 (D. Conn. 1976)). Based on its analysis of the significance of the admission, the Court concludes that the Plaintiff has met her burden under the first prong.

The second prong is prejudice. The Defendants did not address the prejudice prong, however, so they have waived that issue. Moreover, as the First Circuit stated in *Siguel*, prejudice under Rule 36(b) "relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *Id.* at \*15; *Farr Man & Co., Inc. v. M/V Rozita*, 903 F.2d 871, 876 (1st Cir. 1990); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, No. 17-cv-747-LM, 2019 U.S. Dist. LEXIS 66100 (D.N.H. Apr. 18, 2019) ("Prejudice for purposes of Rule 36(b) is not simply that the proponent of the admission would have to prove the fact but instead requires a showing of a particular difficulty in proving the case

such as the absence of a witness or evidence"). There is nothing in this record that would demonstrate that Rule 36(b) prejudice would result from the amendment.

Indeed, what Ms. Irish is prepared to admit in her proposed amendment seems self-evident. Except for Mr. Lord, no one, including the Defendants, knows what he was really thinking when he received the voicemail message (whatever it said) from the State Police. The Defendants are free to present Mr. Lord's own statements to the jury about what he thought the State Police voicemail referred to, something unrelated to Ms. Irish's civil action. Similarly, Ms. Irish is free to present a circumstantial case to the jury that given his prior sexual assaults against her, his prior threats to her, his apparent anger upon hearing the voicemail message, his threat to kill someone immediately upon hearing the voicemail message, and his carrying out that threat and engaging in other violent acts directly against Ms. Irish, her family and her boyfriend after hearing the voicemail, a jury could properly infer that, despite his testimony to the contrary, he believed the State Police were investigating his most recent assaults against Ms. Irish, and that he proceeded to break into her home and shoot her family and boyfriend to punish her for reporting him to law enforcement.

In the terrible circumstances of this case, where Ms. Irish has alleged a simply appalling series of events, leading to the burning of her family barn, the murder of her boyfriend, the grievous wounding of her mother, and her kidnapping, and where there is an irreconcilable disagreement between the Plaintiffs and the Defendants as to what happened to lead to these awful events, it is imperative, as Rule 36(b) directs,

that the parties be allowed to reach the "merits of the action" and that the case not be resolved on a non-prejudicial miscue.

## IV. CONCLUSION

The Court GRANTS the Plaintiff's Motion to Amend Response to Admissions (ECF No. 71).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of June, 2019